**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4529
_____

BRUCE E. BALDINGER

v.

ANTONIO FERRI; MATTEO PATISSO;
NATIONAL FRAUD CONSTABLE a/k/a
THE NATIONAL FRAUD CONSTABLE

Matteo Patisso,
        Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3:10-cv-03122)
District Judge:  Honorable Peter G. Sheridan

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 20, 2013
Before:  AMBRO, HARDIMAN and ALDISERT, Circuit Judges

(Opinion filed: September 27, 2013 )
_____

OPINION
_____

PER CURIAM

        Pro se defendant-appellant Matteo Patisso appeals District Court orders relating to

the entry of a default judgment against him.  We will affirm.

This convoluted case arises out of a diversity action filed by the plaintiff-appellee, attorney Bruce Baldinger.[1] Baldinger accused the various defendants, but most notably Mateo Patisso, of disseminating false information and interfering with his business. Patisso was alleged to harbor an ongoing vendetta against Baldinger that manifested through stalking behavior, posting defamatory material on the Internet, intervening in cases brought by Baldinger, and so on.

Throughout the litigation, Patisso did not fully comply with his discovery obligations. The District Court eventually instructed the Clerk to enter a default against Patisso pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi), relying in part on the six-factor test of Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863, 868 (3d Cir. 1984). The District Court permitted Baldinger to move for default judgment, which he did in February 2012. (A default judgment had previously been entered against Patisso after he failed to answer the complaint; however, that judgment was later vacated when Patisso began to participate.)

The District Court scheduled an evidentiary hearing on Baldinger's motion for July 2012. Shortly before the hearing was to be held, Patisso sent a letter to the Court in which he claimed that injuries from a motor-vehicle accident (occurring approximately two months earlier) would prevent him from physically attending court on that day. His letter did not request any alternative accommodations. Observing that the hearing had

---

[1] We discussed the early stages of this case in Baldinger v. Ferri, 483 F. App'x 708 (3d Cir. 2012).

already been much delayed, and that the object of the hearing was simply to show damages, the Court decided to move ahead despite Patisso's absence. On July 12, the District Court entered its final judgment, awarding more than a million dollars to Baldinger and imposing an injunction on Patisso.

Patisso moved to set aside the default judgment by filing a motion for reconsideration on July 30. He objected to the presentation of alleged hearsay and uncorroborated testimony at the hearing, which he claimed was conducted in violation of due process and his "right to confront,"[2] as well as numerous New Jersey laws. He also argued that the District Court violated the New Jersey Punitive Damages Act, N.J. Stat. Ann. § 2A:15-5.9 *et seq.*, because the Court failed to "la[y] out the reasons" for imposing damages and "never addressed" Patisso's ability to pay. See, e.g., N.J. Stat. Ann. § 2A:15-5.12(c)(4).[3] Patisso also enclosed documentation relating to his alleged car accident: the May 4 incident report, a May 7 doctor's note reflecting that Patisso was "not able to appear in court for at least ten days," and a July 3 follow-up note establishing that Patisso could not travel any distances farther "than 30 minutes." Patisso also filed a motion to set aside the judgment pursuant to Fed. R. Civ. P. 60(b), attacking the merits of

---

[2] Of course, the Confrontation Clause of the Sixth Amendment applies only to "criminal prosecutions."

[3] We note that the issue of compliance with the Act was litigated below by Baldinger; in other words, the parties and the District Court were aware of their respective statutory obligations. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .").

the underlying proceeding while alleging that Baldinger's proffer amounted to a "fraud upon the court."

At a hearing held on November 29, 2012, the District Court denied both motions. The motion for reconsideration was denied as both untimely (as it was filed after the fourteen days allowed by D.N.J. L. Civ. R. 7.1(i)) and meritless. With regard to the Rule 60(b) motion, the District Court concluded that its original judgment was not void or otherwise infirm. The Court entered its orders on December 6; Patisso filed his notice of appeal on December 18.

We have jurisdiction under 28 U.S.C. § 1291.[4] In his opening brief, Patisso identifies four orders that he wishes to contest: the order denying reconsideration, the order denying the Rule 60(b) motion, and two post-judgment orders related to discovery and contempt proceedings. Aside from a cursory mention, however, he does not discuss the latter two orders in his brief, so we will not consider them. See Ethypharm S.A. Fr. v. Abbott Labs., 707 F.3d 223, 231 n.13 (3d Cir. 2013).

Both the entry of default judgments and rulings on motions to set them aside are

---

[4] Although Baldinger argues to the contrary, we hold that we may exercise jurisdiction over the original default-judgment order, to the extent that Patisso also challenges it. Patisso's motion for reconsideration, while possibly untimely under the District Court's local rules, was timely filed if construed as a Fed. R. Civ. P. 59(e) motion, thereby tolling the time to file a notice of appeal. See Fed. R. App. P. 4(a)(4)(A)(iv). The local rule itself explicitly provides for a fourteen-day reconsideration period "unless otherwise provided by statute or rule (such as Fed. R. Civ. P. 50, 52 and 59)," D.N.J. L. Civ. R. 7.1(i), thereby avoiding an impermissible conflict with the twenty-eight-day period contained (for both filing and tolling purposes) in the Federal Rules of Civil and Appellate Procedure. Cf. In re Paoli R.R. Yard PCB Litig., 221 F.3d 449, 459 (3d Cir. 2000).

reviewed for abuse of discretion. See Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 919 (3d Cir. 1992); Farzetta v. Turner & Newall, Ltd., 797 F.2d 151, 155 n.3 (3d Cir. 1986) (explaining, however, that any associated questions of law receive plenary review); see also Zawadski De Bueno v. Bueno Castro, 822 F.2d 416, 420 (3d Cir. 1987) (discussing the consideration of a motion to set aside a default judgment). Because the District Court exercised diversity jurisdiction, it was required to "apply the substantive law as decided by the highest court of the state whose law governs the action." Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1373 n.15 (3d Cir. 1996). Patisso's challenges to the punitive-damage award receive plenary review to the extent that they pertain to legal considerations and abuse-of-discretion review to the extent that they pertain to factual issues. Inter Med. Supplies, Ltd. v. Ebi Med. Sys., 181 F.3d 446, 464 (3d Cir. 1999).

Echoing his submissions before the District Court, Patisso's opening brief functions by and large as an attack on the merits of Baldinger's case against him, as developed in both the complaint and, more generally, in the proof hearing that Patisso did not attend. For example, he continues to claim that the "litigation privilege" protected the speech alleged to have been defamatory; however, that a potential defense existed to the allegations contained in the complaint does not imply that Baldinger's charges were deficient or not well pleaded. Cf. Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988). Indeed, his arguments miss the point, because the "facts" he relies upon are utterly irrelevant to the central reason for the default judgment's entry: Patisso's

5

failure to comply with his discovery obligations. The District Court gave reasons for entering a default judgment, such as Patisso's pattern of delay and contumacious behavior, that facially support its decision to do so and which are proper bases for granting a default judgment. Cf. Briscoe v. Klaus, 538 F.3d 252, 263 (3d Cir. 2008) (emphasizing that not every Poulis factor needs to be satisfied in order for the District Court to properly exercise its discretion). Patisso does not meaningfully contest these determinations.

Patisso also challenges the District Court's decision to proceed without him at the proof hearing. As a preliminary matter, we do not agree with Patisso that his eleventh-hour letter to the District Court revealed his clear desire to obtain another adjournment (or, for that matter, to participate by telephone). But in any event, the District Court operated well within its discretion in moving forward, given the pattern of delay identified and its apparent belief that Patisso would have little to offer at the hearing.

Finally, Patisso challenges the Court's decision to award punitive damages, and, given the size of the damages in question ($537,500, equal to the amount of compensatory damages), we agree that this issue deserves further scrutiny. Patisso maintains that the District Court violated the New Jersey Punitive Damages Act by, inter alia, failing to consider his financial circumstances and by failing to enter its findings into the record. However, nothing in the Act appears to require the presiding judge to enter or announce his findings in any particular way. Patisso's procedural objections are not based in the text of the Act. Otherwise, the size of the award was within permissible

6

limits pursuant to N.J. Stat. Ann. § 2A:15-5.14(b). And to the extent that Patisso argues that the Court failed to consider his financial status, we agree with Baldinger that Patisso obfuscated evidence of his actual means throughout this action; furthermore, Baldinger did introduce proof (albeit of a limited sort) in an attempt to show the extent of Patisso's assets and specifically raised the issue of Patisso's financial status in his final motion for a default judgment. Besides, the New Jersey Supreme Court has explained that a "defendant's inability to pay . . . should not preclude a punitive damages award because the [Act] specifically lists other factors that the [fact finder] can consider[;] . . . [e]vidence concerning the financial status of a defendant is simply one relevant consideration to be weighed when determining the amount of a punitive damages award." Tarr v. Bob Ciasulli's Mack Auto Mall, Inc., 943 A.2d 866, 872 n.4 (N.J. 2008) (citations omitted).

Accordingly, we will affirm the District Court's rulings.